UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| CHARLES WAYNE JOHNSON<br>    FED. REG. NO. 05292-043<br>VS. | CIVIL ACTION NO.08-0589<br><br>SECTION P<br><br>JUDGE DOHERTY |
| ATTORNEY GENERAL, ET AL. | MAGISTRATE JUDGE METHVIN |

**REPORT AND RECOMMENDATION**

*Pro se* plaintiff Charles Wayne Johnson, proceeding *in forma pauperis*, filed the instant civil rights complaint pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)[1] on April 28, 2008. Plaintiff is an inmate in the custody of the Federal Bureau of Prisons (BOP). He is incarcerated at the Federal Correctional Institute, Oakdale, Louisiana (FCIO) and he complains that he has received inadequate medical care during the time he has been in BOP custody. He sues the Attorney General of the United States, BOP Director Harley Lappin,, BOP South-Central Regional Director, G. Maldonado, Jr., FCIO Warden Joe P. Young, Jr., Ms. Shoeman, Salvador Villalon, J. Berrios, M.D., and L. Berrios, M.D. He seeks compensatory damages of $10 million per defendant per year, an unspecified amount of punitive damages, and an injunction directing the defendants to have plaintiff treated by an orthopedic specialist. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended

---

[1] In *Bivens*, the Supreme Court recognized that certain circumstances may give rise to a private cause of action against federal officials that is comparable to the statutory cause of action permitted against state officials by 42 USC § 1983. It appears that all of the defendants are agents or employees of the federal government.

that the complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

*Background*

Sometime in early 2005 plaintiff was imprisoned at the Federal Corrections Institute (FCI Beaumont), Beaumont, Texas. While working in that facility's food service department he began to experience "severe pain from his lower back down his left leg into his groin down to his left foot." He was immediately sent to the FCI Beaumont medical department for diagnosis and treatment. X-ray examination of his back, legs, and lower body revealed "spine-spurs" and a bulging disc in plaintiff's lower back.

The physician at FCI Beaumont informed plaintiff that left untreated, his condition would quickly deteriorate. These physicians then ordered an MRI[2] and scheduled "tele-med" appointment with an orthopedic specialist. The specialist directed plaintiff to lose weight and ordered plaintiff to follow a diet. He also prescribed pain medication and steroid injections to reduce swelling and inflammation. The orthopedic specialist also scheduled an appointment at a

---

[2] Magnetic resonance imaging (MRI) is a noninvasive way to take pictures of the body. Unlike x-rays and computed tomographic (CT) scans, which use radiation, MRI uses powerful magnets and radio waves. The MRI scanner contains the magnet. The magnetic field produced by an MRI is about 10 thousand times greater than the earth's.The magnetic field forces hydrogen atoms in the body to line up in a certain way (similar to how the needle on a compass moves when you hold it near a magnet). When radio waves are sent toward the lined-up hydrogen atoms, they bounce back, and a computer records the signal. Different types of tissues send back different signals. Single MRI images are called slices. The images can be stored on a computer or printed on film. One exam produces dozens or sometimes hundreds of images. Medline Plus, Medical Encyclopedia, A Service of the U.S. National Library of Medicine and the National Institutes of Health at http://www.nlm.nih.gov/medlineplus/ency/article/003335.htm

hospital in Galveston for a "spine-exam" and MRI. The orthopedic specialist also discussed alternative treatments including "D.T.S."[3] and surgery.

As a result of Hurricane Rita, the appointment was cancelled. Plaintiff was transferred to Federal Corrections Institute (FCIB), Bennettsville, South Carolina. At Bennettsville, the previously ordered treatment plan was abandoned and plaintiff was provided pain medication. According to plaintiff, his complaints to the FCIB Warden and Dr. Berris were ignored and he was deprived of "much needed treatment."

On some unspecified date plaintiff was transferred to FCIO. Upon his arrival he was provided pain medication. On some unspecified date an MRI was performed which confirmed the diagnosis of the physicians at FCI Beaumont – bulging disc at L3-L4 and degenerative changes at L3-L4 and L5-S1. The medical staff at FCIO recommended epidural steroid injection. Plaintiff claims that this treatment had previously proven ineffective and caused plaintiff an adverse reaction because plaintiff is diabetic.

Plaintiff requested "D.T.S." treatment and an evaluation by an orthopedic specialist. Health Services Administrator Salvador Villalon ordered the examination but it was ultimately denied.

---

[3] Spinal Decompression Therapy or Non-Surgical Spinal Decompression is a technology used primarily by chiropractors to treat disc injuries in the neck and the low back. For the low back, the patient lies on his/her back or stomach on the decompression table, with a set of padded straps snug around the waist and another set around the lower chest. For the neck, the patient lies on his/her back with a pair of soft rubber pads behind the neck. . This treatment option utilizes FDA cleared equipment to apply distraction forces to spinal structures in a precise and graduated manner. Distraction is offset by cycles of partial relaxation. This technique of spinal decompression therapy, that is, unloading due to distraction and positioning, has shown the ability to gently separate the vertebrae from each other, creating a vacuum inside the discs that we are targeting. This "vacuum effect" is also known as negative intra-discal pressure. American Spinal Decompression Therapy Association at www.americanspinal.com/

Plaintiff, a 52 year old self-described "chronic care" patient has been diagnosed with hypertension, hyperlipidemia, chronic low back pain from degenerative disc disease, diabetes, neuropathy and obesity. He claims that for the past four years he has "... suffered needlessly from a treatable serious medical condition..." and that his condition has deteriorated. He also faults the defendants because they have denied plaintiff "... alternative treatments..." He also claims that inmates "...have the right to refuse any treatment in which they truthfully feel is not safe and they have a basic right to take an active role in any treatment plan and a right to have all their questions answered concerning drug interaction the risk over the benefit of the treatment and the risk of having very long needles injected into the spine and dangerous steroids given to a diabetic and a right to a second opinion prior to such a risky procedure..."

Plaintiff also alleged that he "... was offered a steroid treatment which had previously failed and caused serious problems for his diabetic condition... the plaintiff requested a non-surgical treatment that required not dangerous steroids or needles and was refused and deprived of any treatment at all." According to plaintiff, "[t]his denial of alternative medical treatment options subjects the plaintiff to cruel and unusual punishment in violation of his Eighth Amendment Rights." Finally, he claimed that "... when he elected not to risk his life with the dangerous steroids he was out right refused any other treatment options or second opinions and the defendants took no steps to correct this dilemma and allowed plaintiff to suffer and risk the chance of his condition getting worse and simply left the plaintiff untreated rather than provide ... medical care or readily available treatment options..."

Plaintiff filed grievances at the local, regional, and national levels. In his Central Office Administrative Remedy Appeal dated July 7, 2007 plaintiff claimed,

> ... the medical staff ... have done absolutely nothing in the past two (2) years since I was diagnosed with degenerative disk and chronic obesity, to professionally treat these conditions instead of allowing the pushing of more and more pain medications, which do absolutely nothing to treat RODT problem only mask it... I am respectfully requesting strict compliance to the prescribed treatments, diet, and medications prescribed by the specialist. I am also requesting an FDA approved treatment "Decompression Therapy" to address the toot cause of my back pain and herniated disk. This treatment takes the pressure off the disk and the pain producing nerves, allowing them to heal naturally without harmful and damaging pain medications, steroids, surgery, or hospitalization, with no harmful side effects and risks that come from drugs or surgery." [rec. doc. 1, p. 14]

On August 16, 2007, the Administrator of National Inmate Appeals responded,

> Relevant portions of your medical record have been reviewed which reveal you have been diagnosed with hypertension, hyperlipidema, chronic low back pain (degenerative disc disease), diabetes, diabetic neuropathy and obesity. On December 13, 2006 an MRI of your lumbar spine was performed which revealed a mild disc bulge at L3-L4 and degenerative changes at L3-L4 and L5-S1. You have been educated on proper stretching exercises and instructed to lose weight. On July 10, 2007, you were evaluated by a consultant rheumatoligist, who recommended a treatment plan consisting of epidural steroid injections, medication, and weight loss. There was no recommendation for you to receive specialized therapy. Medical staff will review the recommendations made by the consultant rheumatoligist and a treatment plan will be discussed with you. [rec. doc. 1, p. 15]

Plaintiff filed suit on April 28, 2008. The complaint and its accompanying memorandum imply that plaintiff rejected the treatment protocol recommended by by the rheumatologist. [see rec. doc. 1 and rec. doc. 1-3]

*Law and Analysis*

*1. Screening*

When a prisoner seeks redress from a governmental entity or from an officer or employee of a governmental entity, the court is obliged to evaluate the complaint and dismiss it without service of process, if it is frivolous, malicious, fails to state a claim upon which relief can be

granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C.1915A; 28 U.S.C.1915(e)(2).; *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir.1990). A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir.1993); see, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

A hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n. 4 (5th Cir.1991). A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir.1986).

District courts must construe *in forma pauperis* complaints liberally, particularly in the context of dismissals under § 1915(e)(2)(B), but are given broad discretion in determining when such complaints are frivolous. *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir.1994). A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations. *Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir.1995). A district court is bound by the allegations in a plaintiff's complaint and is "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d at 97.

Plaintiff's complaint, the memorandum in support, and the accompanying exhibits detail both the broad contours and the specifics of his claim for relief. He has pleaded his best case and need not be afforded further opportunities to amend.

*2. Deliberate Indifference*

Plaintiff claims that he has been denied appropriate medical treatment for his back problems. Medical care claims when asserted by convicted prisoners, like plaintiff, are analyzed under the Eighth Amendment's prohibition of cruel and unusual punishment. In order to prevail on such claims, convicts must establish that the defendant prison officials knew of and then disregarded an excessive risk to the plaintiff's health and safety. *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). In other words, the plaintiff must show "deliberate indifference" on the part of the defendants. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). "Deliberate indifference" in this context means that: (1) the prison officials were aware of facts from which an inference of substantial risk of serious harm could be drawn; (2) the officials actually drew that inference; and (3) the officials' response indicated that <u>they subjectively intended that harm occur</u>. *Thompson v. Upshur County, Texas*, 245 F.3d at 458-59. Such deliberate indifference has been equated with "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825,837, 114 S.Ct. 1970, 1980, 128 L.Ed.2d 811 (1994); *Reeves v. Collins*, 27 F.3d 174 (5th Cir.1994).

Thus, even "... the failure to alleviate a significant risk that [the official] <u>should have perceived</u>, but did not is insufficient to show deliberate indifference." *Domino v. Texas Department of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001)(emphasis supplied). Moreover, "deliberate indifference cannot be inferred merely from <u>a negligent or even a grossly negligent response</u> to a substantial risk of serious harm." *Thompson*, 245 F.3d at 459 (emphasis supplied). "Deliberate indifference encompasses only unnecessary and wanton infliction of pain

repugnant to the conscience of mankind." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir.1997); see also *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999).

"[D]eliberate indifference is an extremely high standard to meet" and requires a showing that "the officials 'refused to treat [the prisoner], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir.2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir.1985)). <u>Finally, disagreement with diagnosis and treatment cannot support a claim of deliberate indifference</u>. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir.1995); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir.1991).

Plaintiff's complaints were not ignored; he was not intentionally treated incorrectly. By his own admission, BOP personnel provided immediate treatment when plaintiff complained of pain for the first time in early 2005. He was afforded an examination by a physician at FCI Beaumont and then later he was given the opportunity to discuss his ailment with an orthopedic specialist via "tele-med." That physician directed plaintiff to lose weight and, he ordered pain medication and steroid injections to reduce swelling and inflammation. That specialist also scheduled an appointment for further examination at a Galveston, Texas hospital. The specialist also discussed alternative therapies and surgery. Unfortunately, plaintiff was unable to keep this appointment due to Hurricane Rita which struck the Louisiana and Texas coasts in September 2005.

Plaintiff was ultimately transferred to FCIB and, while plaintiff claims that his treatment plan was abandoned, he conceded that he was afforded pain medication while at that facility.

Upon his arrival at FCIO he was also provided pain medication and the long-awaited MRI was performed on December 13, 2006. The FCIO medical staff were able to confirm the earlier diagnosis of degenerative disc disease and epidural steroid injections were again recommended. He was educated on the proper stretching exercises and again instructed to lose weight. On July 10, 2007 he was examined and evaluated by a specialist – a rheumatologist – who concurred with the recommendations of the Texas orthopedic specialist and the FCIO staff who recommended epidural steroid injections, pain medication, and weight loss.

Plaintiff, disagrees with the treatment plan which has been approved by at least two physicians, including an orthopedic specialist and a rheumatologist. He demands alternative therapy and assumes that his disagreement with treatment recommendations establishes deliberate indifference.[4] He is incorrect, however.

The fact that a plaintiff disagrees with what medical care is appropriate or with the course of treatment offered by the medical staff does not state a claim of deliberate indifference to serious medical needs. See *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir.1997); *Callaway v. Smith County*, 991 F. Supp. 801, 809 (E.D. Tex. 1998); *Spears v. McCotter*, 766 F.2d 179 (5th

---

[4] As noted above, plaintiff faults the defendants because they have denied him "... alternative treatments..." He argues that inmates "...have the right to refuse any treatment in which they truthfully feel is not safe and they have a basic right to take an active role in any treatment plan and a right to have all their questions answered concerning drug interaction the risk over the benefit of the treatment and the risk of having very long needles injected into the spine and dangerous steroids given to a diabetic and a right to a second opinion prior to such a risky procedure..." He also alleged that he "... was offered a steroid treatment which had previously failed and caused serious problems for his diabetic condition... the plaintiff requested a non-surgical treatment that required not dangerous steroids or needles and was refused and deprived of any treatment at all." According to plaintiff, "[t]his denial of alternative medical treatment options subjects the plaintiff to cruel and unusual punishment in violation of his Eighth Amendment Rights." Finally, he claimed that "... when he elected not to risk his life with the dangerous steroids he was out right refused any other treatment options or second opinions and the defendants took no steps to correct this dilemma and allowed plaintiff to suffer and risk the chance of his condition getting worse and simply left the plaintiff untreated rather than provide ... medical care or readily available treatment options..."

Cir. 1985); *Mayweather, supra; Varnado v. Lynaugh,* 920 F.2d 320, 321 (5th Cir. 1992) citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In *Woodall v. Foti*, 648 F.2d. 268, 272 (5th Cir. 1981), the Fifth Circuit Court of Appeals stated that the test in balancing the needs of the prisoner versus the needs of the penal institution is one of medical necessity, not of desirability. The fact that a plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. Prisoners are not constitutionally entitled to the best medical care that money can buy. *See Mayweather v. Foti,* 958 F.2d. 91 (5th Cir. 1992); *Woodall, supra.* Merely alleging a prison doctor should have undertaken additional diagnostic measures or utilized an alternative method of treatment does not elevate a claim to constitutional dimension. *Varnado*, 920 F.2d at 321. See, *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985) (A disagreement with a doctor over the method and result of medical treatment does not require a finding of deliberate indifference). Furthermore, the fact that plaintiff continues to suffer from pain is insufficient to establish that a constitutional violation has occurred. *Mayweather, supra*.

Furthermore, delay in medical care to a prisoner rises to a violation of the Eighth Amendment only if there is deliberate indifference which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d. 191, 195 (5th Cir. 1993); *Olson v. Stotts,* 9 F.3d 1475, 1477 (10th Cir. 1993); *Citrano v. Allen Correctional Center,* 891 F.Supp. 312 (W.D. La. 1995); *Shapley v. Nevada Board of State Prison Commissioners,* 766 F.2d 404, 407 (9th Cir. 1985)(delay in medical treatment must cause substantial harm in order to violate the constitution); 849 F.2d 863, 871 (4th Cir. 1988)(14 hour delay in medical treatment did not violate the 8th Amendment when the injuries required no stitches and no pain killers).

For the foregoing reasons, plaintiff's medical care claim is frivolous.

*3. Conclusion and Recommendation*

Plaintiff's allegations do not establish the deliberate indifference standard required under law. His medical care allegations are subject to dismissal as frivolous and for failing to state a claim for which relief may be granted. Therefore,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim on which relief may be granted pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See** *Douglas v. United Services Automobile Association,* **79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 20, 2009.

                                      Mildred E. Methvin
                                      United States Magistrate Judge